**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVALANCHE TECHNOLOGY, INC., | |
| Plaintiff, | |
| v. | C.A. No. _____ |
| EVERSPIN TECHNOLOGIES, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant | |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Avalanche Technology, Inc. ("Avalanche") in its Complaint for patent infringement against Defendant Everspin Technologies, Inc. ("Everspin") allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action for infringement of Avalanche's U.S. Patent Nos. 9,318,179 (the "179 Patent"), 9,419,210 (the "210 patent"), 11,678,586 (the "586 Patent"), and 10,490,737 (the "737 Patent") (collectively, the "Asserted Patents"). This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

<u>**THE PARTIES**</u>

2.      Avalanche is a Delaware corporation. Its principal place of business is 3450 West Warren Avenue, Fremont, California 94538. Avalanche is the assignee and owner of the Asserted Patents.

3.      Avalanche focuses on the development and commercialization of its novel Spin-Transfer Torque Magnetoresistive Random Access Memory (STT-MRAM) products. Avalanche designs, develops and commercializes high-performance, non-volatile STT-MRAM products for applications in the industrial, automotive, and aerospace/defense industries, among

others, and conducts research, development, and manufacturing activities related to its STT-MRAM products at its facilities in Fremont, California.

4.     On information and belief, Everspin is a company organized and existing under the laws of the State of Delaware. On information and belief, its principal place of business is at 5670 W. Chandler Boulevard, Suite 130, Chandler, Arizona, 85226.

5.     On information and belief, Everspin makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and components that have been and are used to infringe one or more claims of the Asserted Patents, actively induces infringement by others of the Asserted Patents, and contributes to the infringement by others of the Asserted Patents.

## JURISDICTION AND VENUE

6.     Avalanche incorporates the foregoing paragraphs of the Complaint by reference as if fully set forth herein.

7.     This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C § 1 et seq., including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over Everspin, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Everspin is a Delaware corporation and thus resides in this district.

## BACKGROUND

### A.     Avalanche's State of the Art STT-MRAM Products

9.     Avalanche is a pioneer in the development of STT-MRAM technology. Avalanche designs, develops, and commercializes novel, high-performance, STT-MRAM devices for the industrial, automotive, and aerospace/defense markets, among others. The company's revolutionary perpendicular magnetic tunnel junction (pMTJ) MRAM devices are engineered for

2

fast write speeds, high endurance, low power, and long data retention. Avalanche's standalone STT-MRAM devices combine persistence, speed, and endurance in a single memory solution, while its embedded MRAM products allow MRAM to be integrated directly into systems on chip ("SoCs") and microcontrollers, which eliminate the need for separate Flash or EEPROM devices and provide lower cost, improved power efficiency, and simpler design processes.

10.     Avalanche's state of the art STT-MRAM product portfolio spans industrial temperature ranges through automotive qualification and into radiation-tolerant space applications, allowing its patented technology to be used across diversified platforms and include radiation tolerances suitable for low and medium earth orbit missions, geostationary orbit missions, and high-altitude avionics. Avalanche's space-grade products deliver solutions that meet all five criteria required for space missions: "Survive. Retain. Endure. Commit. Proven." Avalanche's space-grade products are used in spacecraft command-and-data-handling (C&DH) processors, payload data processing units, and solid-state data recorders

11.     Avalanche's STT-MRAM products also provide the ability to remove batteries and supercapacitors from the memory subsystems, enabling simpler board designs and improved reliability. Avalanche's STT-MRAM technology is the frontrunner to replace traditional Flash and SRAM memory devices for unified memory architectures in future SoC systems, delivering high performance and low power with a path to continued scalability.

### B.     The Infringing Everspin Accused Products

12.     Everspin commercializes and has been commercializing Magnetoresistive Random Access Memory (MRAM) products, including STT-MRAM, and has positioned its STT-MRAM products to compete directly with Avalanche's STT-MRAM product portfolio.

13.     According to Everspin's website, "Everspin's Spin-transfer Torque (STT) MRAM technology uses the spin-transfer torque property, which is the manipulation of the spin of

3

electrons with a polarizing current, to establish the desired magnetic state of a magnetic tunnel junction (MTJ)." "Spin-transfer Torque MRAM Technology", *available at* https://www.everspin.com/spin-transfer-torque-mram-technology.

14.    Also, according to Everspin's website and as shown in the image below, "STT-MRAM delivers a significant reduction in switching energy compared to [Everspin's] Toggle MRAM. It is highly scalable, enabling higher density memory products. Everspin STT-MRAM uses a perpendicular MTJ with high perpendicular magnetic anisotropy, providing long data retention, small cell size, greater density, high endurance, and low power. In a write operation, the direction of the polarizing current passing through the MTJ will determine the magnetic state of the free layer. When parallel to the fixed layer, the MTJ is in a low resistance state and when anti-parallel, it is in a high resistance state, effectively providing an equivalent of a bit cell in a logic one or zero state." "Spin-transfer Torque MRAM Technology", *available at* https://www.everspin.com/spin-transfer-torque-mram-technology.



15.    As of the date of the filing of this Complaint, Everspin sells the following product families (collectively the "Everspin Accused Products") that practice the technology claimed by the Asserted Patents: PERSYST xSPI Octal Interface MRAM devices, PERSYST xSPI Quad Interface MRAM devices, and STT-DDR devices. These product families include various

generations, memory sizes, and configurations, including products that Everspin no longer manufactures, but are still available for sale at least through third parties or are embedded into third party products that are available for purchase. Upon information and belief, all Everspin Accused Products are configured and operate in substantially the same way with respect to the Asserted Patents, and all Everspin Accused Products infringe each the Asserted Patents. The list of Everspin Accused Products and corresponding Everspin part numbers is provided as Ex. 1.

16.     Everspin's ongoing activities constitute infringement of the Asserted Patents by Everspin, its customers, and/or its end users.

17.     For example, Everspin's website directs customers to "Buy or Sample" the Everspin Accused Products in the United States and further directs customers to Everspin's sales team members, Representatives, and Distributors. (*See* Everspin Sales Offices, Representatives and Distributors, *available at* https://www.everspin.com/sales#tab_dis-na.)

18.     Further, Everspin advertises the following Accused Products that it calls "xSPI Evaluation Boards" sold by third-party distributors that it claims are "based on Everspin's unique industrial STT MRAM technology": xSPI Intel FPGA MRAM Evaluation Board, xSPI AMD/Xilinx FPGA MRAM Evaluation Board, EMxxLX MRAM Evaluation Boards from MikroE, MAS Elettronica Educational Certus Pro NX with EMxxLX Support, Arrow AXE-5 Eagle Host Board, and Arrow CYC5000 IoT / Maker Host Board. (*See* Everspin PERSYST xSPI for Industrial IoT and Embedded Systems, *available at* https://www.everspin.com/persyst-xspi-industrial-iot-and-embedded-systems.) On information and belief, Everspin sells these xSPI Evaluation Boards to third-party distributors who then sell to customers in the United States. Everspin's website provides a link to order these xSPI Evaluation Boards from the third-party distributors. *Id.*

19. To the extent that Everspin tests or uses the xSPI Evaluation Boards in the United States, Everspin thereby uses the Everspin Accused Products in a manner that infringes the Asserted Patents. *See* Expanded Serial Peripheral Interface (xSPI) Industrial STT-MRAM Persistent Memory datasheet), *available at* https://www.everspin.com/supportdocs/EM064LXQADG13CS1T?npath=3843.)

20. On information and belief, Everspin also encourages, instructs, and/or aids one or more persons, including but not limited to Global Foundries, to manufacture Accused Products and to import, offer to sell, sell, and/or use the Accused Products. *See* Everspin's SEC 10-K Filing at 58 (*available at* https://investor.everspin.com/static-files/c954d86e-6a57-4f47-baa7-10a80a74ddce). Everspin's SEC 10-K also states "[Global Foundries] possesses the exclusive right to manufacture the Company's discrete and embedded STT-MRAM devices" and that "[i]f [Global Foundries] manufactures, sells, or transfers to customers wafers containing production quantified STT-MRAM devices that utilize certain design information, [Global Foundries] will be required to pay [Everspin] a royalty." *Id.* at 58.

21. On information and belief, Everspin also provides the Everspin Accused Products to reseller customers, such as Trenz Electronic, MikroE, MAS Elettronica, and Arrow Electronics, with the intent that such reseller customers will sell and/or offer for sale Accused Products within the United States, which sales constitute acts of direct infringement. For the reasons described above, on information and belief, Everspin commits these acts with the specific knowledge and intent that the Everspin Accused Products will be sold and/or offered for sale in a manner that infringes the Asserted Avalanche Patents. *See* Everspin PERSYST xSPI for Industrial IoT and Embedded Systems (*available at* https://www.everspin.com/persyst-xspi-industrial-iot-and-embedded-systems).

22.     Everspin also provides the Everspin Accused Products to customers so that such customers will incorporate the Everspin Accused Products in downstream devices and subsequently sell, offer for sale, and/or use such products containing the Everspin Accused Products in an infringing manner. For the reasons described above, on information and belief, Everspin commits these acts with the specific knowledge and intent that the Everspin Accused Products and products containing the Everspin Accused Products will be sold and/or offered for sale in a manner that infringes the Asserted Avalanche Patents. For example, Everspin's SEC 10-K for the fiscal year ending December 31, 2024, states "[w]e have licensed GLOBALFOUNDRIES to offer embedded MRAM in the solutions they manufacture for their customers providing high-performance non-volatile embedded memory." *See* Everspin's SEC 10-K Filing at 5 (*available at* https://investor.everspin.com/static-files/c954d86e-6a57-4f47-baa7-10a80a74ddce). The same SEC 10-K from Everspin states "[w]e have licensed base MRAM design technology (EAR99) for use in radiation tolerant aerospace applications to customers for their custom designs." *Id.* Additionally, an interview with Everspin's President and Chief Executive Officer, Sanjeev Aggarwal, states "[a] typical process flow for a radiation-hardened wafer with several devices would be for the DIB customer to build the radiation-hardened periphery in the silicon and ship these incomplete wafers to Everspin to build MRAM on them. Completed wafers with Everspin MRAM integrated into this silicon are then shipped back to the DIB customer for packaging and test." *See* MRAM-info, *Leading the Charge in MRAM: An Interview with Everspin's CEO*, dated September 4, 2024 (*available at* https://www.mram-info.com/leading-charge-mram-interview-everspins-ceo). Also, IBM's FlashCore Module uses the Everspin Accused Products. *See* IBM FlashCore Module Product Guide, copyright 2024 at 15 (*available at* https://www.redbooks.ibm.com/redpapers/pdfs/redp5725.pdf) ("The first generation

of FCM drives were built by using 64-layer TLC flash memory and an Everspin Magnetoresistive Random Access Memory (MRAM) cache into a U.2 form factor.").

23.    Additionally, Everspin encourages, instructs, and/or aids one or more persons to make, use, sell, offer to sell, and/or import the Accused Products by advertising the following xSPI Evaluation Boards sold by third-party distributors that it claims is "based on Everspin's unique industrial STT MRAM technology": xSPI Intel FPGA MRAM Evaluation Board, xSPI AMD/Xilinx FPGA MRAM Evaluation Board, EMxxLX MRAM Evaluation Boards from MikroE, MAS Elettronica Educational Certus Pro NX with EMxxLX Support, Arrow AXE-5 Eagle Host Board, and Arrow CYC5000 IoT / Maker Host Board. *See* Everspin PERSYST xSPI for Industrial IoT and Embedded Systems (*available at* https://www.everspin.com/persyst-xspi-industrial-iot-and-embedded-systems). Everspin provides links to purchase the Everspin Accused Products from these third-party distributors. *Id.* Everspin also instructs one or more persons on use of such xSPI Evaluation Boards by also citing User Guides and a Manual. *Id.*

24.    Everspin encourages, instructs, and/or aids one or more persons to import, offer to sell, sell, or use Everspin Accused Products by advertising that customers can "Buy or Sample" the Everspin Accused Products in the United States and directs customers to its sales representatives and distributors. *See* Everspin Sales Offices, Representatives and Distributors (*available at* https://www.everspin.com/sales#tab_dis-na).

25.    Everspin contributes to the infringement of one or more of the claims of the Asserted Patents by offering to sell or selling through its website the Everspin Accused Products. Everspin's website directs customers to "[b]uy or [s]ample" the Everspin Accused Products in the United States where it further directs customers to Everspin sales team members, representatives,

and distributors. *See* Everspin Sales Offices, Representatives and Distributors (*available at* https://www.everspin.com/sales#tab_dis-na).

## THE PATENTS-IN-SUIT

26.     Everspin has and continues to directly infringe, contributorily infringe, and/or induce the infringement of:

a.  U.S. Patent No. 9,318,179, entitled "Spin-transfer torque magnetic random access memory with perpendicular magnetic anisotropy multilayers," Exhibit 2 (the "179 Patent");

b.  U.S. Patent No. 9,419,210, entitled "Spin-transfer torque magnetic random access memory with perpendicular magnetic anisotropy multilayers," Exhibit 3 (the "210 Patent");

c.  U.S. Patent No. 11,678,586, entitled "Memory system having thermally stable perpendicular magneto tunnel junction (MTJ) and a method of manufacturing same," Exhibit 4 (the "586 Patent"); and

d.  U.S. Patent No. 10,490,737, entitled "Magnetic memory element including magnesium perpendicular enhancement layer," Exhibit 5 (the "737 Patent").

**C.     The 179 Patent**

27.     The 179 Patent is directed to a novel spin-transfer torque magnetic random access memory (STT-MRAM) element "having magnetic tunnel junctions (MTJs) with ferromagnetic multilayers whose magnetization is oriented perpendicular to the plane of the substrate, and having lower programming current density while maintaining higher thermal stability." 179 Patent at 1:24-30. STT-MRAM is a non-volatile memory type that uses the magnetic orientation of electrons, rather than electric charge, to store data. It works by passing current through a Magnetic Tunnel Junction ("MTJ") — a tiny structure comprising at least two ferromagnetic metal layers

separated by a thin insulating barrier, to flip the magnetic state of a "free layer" in the MTJ from one direction to another, each direction representing a '0' or '1'.

28.    The inventions of the 179 Patent address limitations of other types of prior inferior MRAM devices and also prior inferior implementations of STT-MRAM. For example, the patent recognizes that the problems with magnetic-field-switched MRAM devices, one type of MRAM, include that they require high write currents, have complex cell architectures, and exhibit poor scalability. *Id.* at 1:42-46. STT-MRAM technology overcomes these hurdles by directly passing a current through the MTJ, resulting in a lower required switching current, smaller size, reduced manufacturing costs, and simpler cell architecture. *Id.* at 1:50-56.

29.    An important challenge in implementing STT-MRAM is reducing the current required to switch the magnetization of the free layer while maintaining high thermal stability, which is a requirement for reliable data retention. *Id.* at 1:56-60. Prior art in the STT-MRAM space relied on Cobalt/Iron/Boron alloys as the "free" magnetic layer, which intrinsically provide a degree of "perpendicular anisotropy" — a property in thin magnetic films where the magnetic orientation naturally tends to align perpendicular (out-of-plane) to the film's surface, rather than in-plane (parallel with the surface). *Id.* at 2:6-21. However, a single magnetic layer presents problems. If the layer is too thin it may become superparamagnetic and unstable. *Id.* at 2:21-22. If the layer is too thick, the anisotropy can become in-plane rather than perpendicular and can also affect thermal stability. *Id.* at 2:22-24.

30.    The inventions claimed in the 179 Patent are intended to address these problems by providing an MTJ that can be manufactured simply and provides reduced switching current and greater thermal stability. *Id.* at 2:32-41.

31.     The 179 Patent inventions address these issues by, *inter alia,* disclosing and claiming an improved STT-MRAM with MTJs that have a composite free layer made up of one or more repeats of a bilayer unit comprising a nonmagnetic insulating layer and an iron-rich ferromagnetic layer. *Id.* at Abstract. The novel multilayer stacked approach enhances anisotropy by leveraging multiple interfaces, enabling lower switching current density while sustaining high thermal stability. *See, e.g., id.* at 3:45-54. In addition, the 179 Patent inventions disclose and claim a magnetic pinned layer (which can also comprise one or more bilayer units) and a tunnel barrier layer formed between the composite free layer and the magnetic pinned layer, as well as a magnetic fixed layer that is coupled to the magnetic pinned layer through an anti-ferromagnetic coupling layer. *See, e.g., id.* at 7:18-29. This magnetic fixed layer has a second fixed magnetization direction that is substantially perpendicular to a layer plane thereof and is substantially opposite to the fixed magnetization direction of the magnetic pinned layer. *Id.* The 179 Patent further describes and claims that the bilayer structure of the free layer and the pinned layer can further include another layer — a "(boron) absorption layer" that can capture boron atoms diffusing from the CoFeB layers. This absorption layer can help make "multi-layer perpendicular anisotropy more thermally stable and helps produce higher effective perpendicular anisotropy in the magnetic layer." *Id.* at 4:20-29.

32.     By introducing multilayer stacks with interfacial anisotropy, the claimed STT-MRAM elements provide significantly reduced switching current density while maintaining high thermal stability suitable for reliable STT-MRAM products. *See, e.g., id.* at 3:45-54. These implementations were new and not well-known, routine, or conventional at the time of the 179 Patent inventions. The 179 Patent provides technical—not merely conceptual—solutions to recognized, but unsolved STT-MRAM implementation issues.

D.     **The 210 Patent**

33.     The 210 Patent, which is a continuation of the 179 Patent, relates to a "spin transfer torque (STT) magnetic random access memory (MRAM), and, more particularly, to an STTMRAM element having magnetic tunnel junctions (MTJs) with ferromagnetic multilayers whose magnetization is oriented perpendicular to the plane of the substrate, and having lower programming current density while maintaining higher thermal stability." 210 Patent at 1:28-34.

34.     The inventions of the 210 Patent address limitations with other types of prior inferior MRAM devices as well as prior inferior implementations of STT-MRAM. For example, the patent recognizes that the problems with magnetic-field-switched (toggle) MRAM devices, one type of MRAM, include that they require high write currents, have complex cell architectures, and exhibit poor scalability. *Id.* at 1:44-50. STT-MRAM technology overcomes these hurdles by directly passing a current through the MTJ, resulting in a lower required switching current, smaller size, reduced manufacturing costs, and simpler cell architecture. *Id.* at 1:50-56.

35.     An important challenge in implementing STT-MRAM is reducing the current required to switch the magnetization of the free layer while maintaining high thermal stability, which is a requirement for reliable data retention. *Id.* at 1:56-60. Prior art STT-MRAM devices relied on Cobalt/Iron/Boron alloys as the "free" magnetic layer, which intrinsically provide a degree of "perpendicular anisotropy" - a property in thin magnetic films where the magnetic orientation naturally tends to align perpendicular (out-of-plane) to the film's surface, rather than in-plane (parallel with the surface). *Id.* at 2:22-25. However, a single magnetic layer presents problems. If the layer is too thin it may become superparamagnetic and unstable. *Id.* at 2:21-22. If the layer is too thick, the anisotropy can become in-plane rather than perpendicular and can also affect thermal stability. *Id.* at 2:25-28.

36.    The inventions claimed in the 210 Patent are intended to address these problems by providing an MTJ that can be manufactured simply and provides reduced switching current and greater thermal stability. *Id.* at 2:39-45.

37.    The 210 Patent inventions address these issues by, *inter alia,* disclosing and claiming an improved STT-MRAM with MTJs that have a composite free layer made up of one or more stacks of a bilayer unit comprising a nonmagnetic insulating layer and an iron-rich ferromagnetic layer. The novel multilayer stacked approach enhances anisotropy by leveraging multiple interfaces, enabling lower switching current density while sustaining high thermal stability. *See, e.g., id.* at 3:45-54. In addition, the 210 Patent inventions disclose and claim a magnetic pinned layer which can also comprise one or more bilayer units, and a tunnel barrier layer formed between the composite free layer and the magnetic pinned layer, as well as a magnetic fixed layer that is coupled to the magnetic pinned layer through an anti-ferromagnetic coupling layer. *See, e.g., id.* at 7:18-29. This magnetic fixed layer has a second fixed magnetization direction that is substantially perpendicular to a layer plane thereof and is substantially opposite to the fixed magnetization direction of the magnetic pinned layer. *Id.* The 210 Patent further describes and claims that the bilayer structure of the free layer and the pinned layer can further include another layer – a "boron absorption layer" that can capture boron atoms diffusing from the CoFeB layers. This absorption layer can help make "multi-layer perpendicular anisotropy more thermally stable and helps produce higher effective perpendicular anisotropy in the magnetic layer." *Id.* at 4:20-30.

38.    By introducing multilayer stacks with interfacial anisotropy, the claimed STT-MRAM elements provide significantly reduced switching current density while maintaining high thermal stability suitable for reliable STT-MRAM products. *See, e.g., id.* at 3:45-54. These

13

implementations were new and not well-known, routine, or conventional at the time of the 210 Patent inventions. The 210 Patent provides technical—not merely conceptual—solutions to recognized, but unsolved STT-MRAM implementation issues.

###### E.    The 586 Patent

39.    The 586 Patent describes and claims further improvements to a "memory system having spin transfer torque (STT) switched magneto tunnel junctions (MTJs)." 586 Patent at 1:24-31.  In particular, the 586 Patent further addresses the limitations in prior art STT-MRAM chips with perpendicular magnetic tunnel junctions (pMTJs) – *i.e.,* where the magnetization orientation of the MTJ is perpendicular to the material layers of the MTJ. As the 586 Patent recognizes, one of the challenges with implementing STT-MRAM is the desirability of reducing the current required "to switch the magnetization of the free layer while maintaining high thermal stability, which is required for long-term data retention." *Id.* at 2:1-5. The inventors recognized that although perpendicular anisotropy in MTJs – a property in thin magnetic films where the magnetic orientation naturally tends to align perpendicular (out-of-plane) to the film's surface, rather than in-plane (parallel with the surface) – is an effective way to lower switching current and maintain high magnetic thermal stability, there were known limits with this approach. *Id.* at 2:16-19. For example, integrating conventional perpendicular anisotropy materials, such as FePt, introduced high magnetic damping which leads to undesirably high switching current density. *Id.* at 2:20-22. Also, during manufacturing, conventional MTJs required higher temperatures, which could degrade performance and make the process of fabricating the MTJ layers more demanding and complicated. *Id.* at 2:22-28.

40.    To address these problems, the 586 Patent discloses and claims an STT-MRAM element with a novel perpendicular MTJ architecture and manufacturing methodology that enables an STT-MRAM with reduced effective damping, enhanced perpendicular anisotropy, and

increased performance without resorting to high-temperature processing. *See, e.g., id.* at 2:40-56. The novel structure of the STT-MRAM element of the claimed invention includes a free layer architecture comprising two ferromagnetic free sub-layers with perpendicular magnetic anisotropy, separated by a thin perpendicular enhancement layer (PEL) which enhances perpendicular anisotropy, magnetic stiffness, and favorable crystalline texture while reducing damping. *See, e.g., id.* at 5:4-28. The novel structure of the claimed element further includes a reference (pinned) layer that comprises perpendicular reference sub-layers separated by a second PEL, as well as a third reference sub-layer on the opposite side of the spacer which carries magnetization opposite to the first reference sub-layer, canceling net dipolar fields on the free layer and enabling symmetric, low-power switching. *See, e.g., id.* at 5:4-28, 6:49-63.

41.     Collectively, these novel features lower switching current density by reducing effective damping and optimizing perpendicular anisotropy, while preserving or improving thermal stability and performance for the STT-MRAM element. These implementations were new and not well-known, routine, or conventional at the time of the 586 Patent inventions. The 586 Patent provides technical—not merely conceptual—solutions to recognized, but unsolved STT-MRAM implementation issues.

### F.     The 737 Patent

42.     The 737 Patent describes and claims further improvements to a "magnetic random access memory (MRAM) device, and more particularly, to a spin transfer torque MRAM device including at least a perpendicular enhancement layer in its memory element." 737 Patent at 2:8-11.

43.     The patent recognizes that one of the advantages with STT-MRAM over other types of non-volatile memories is its scalability, *i.e.,* the ability to reduce the size of each individual memory unit, which enables denser and larger memory sizes. *Id.* at 2:64-65. As the size of the

perpendicular magnetic tunnel junction (MTJ) is reduced, so is the current required to switch the magnetization direction, thus reducing power consumption.  However, this reduction in size also degrades the thermal stability of the magnetic layers required for data retention. *Id.* at 2:65-3:5.

44.    Thus, the inventors recognized a need for an "STT-MRAM device that has a thermally stable perpendicular MTJ memory element and that can be inexpensively manufactured." *Id.* at 3:6-9. The patented inventions disclose an STT-MRAM element having a MTJ structure "formed between an optional seed layer and an optional cap layer. The MTJ structure comprises a magnetic free layer structure and a magnetic reference layer structure with an insulating tunnel junction layer interposed therebetween, and a magnetic fixed layer separated from the magnetic reference layer structure by an anti-ferromagnetic coupling layer." *Id.* at 3:16-24. The patent discloses that the magnetic free layer structure "may comprise one or more magnetic free layers having a same variable magnetization direction perpendicular to the layer planes thereof." *Id.* at 3:25-27.  The 737 Patent further discloses that the seed layer can "facilitate the optimal growth of magnetic layers formed thereon to increase perpendicular anisotropy," and serve as a bottom electrode to the MTJ.  *Id.* at 7:30-36. These implementations were new and not well-known, routine, or conventional at the time of the 737 Patent inventions. The 737 Patent provides technical—not merely conceptual—solutions to recognized, but unsolved STT-MRAM implementation issues.

**FIRST CAUSE OF ACTION**

**(EVERSPIN'S INFRINGEMENT OF U.S. PATENT NO. 9,318,179)**

45.    Avalanche incorporates each of the preceding paragraphs as if fully set forth herein.

46.    The 179 Patent issued on April 19, 2016, to Avalanche.

47.    Avalanche owns by assignment the entire right, title, and interest to and in the 179 Patent. A true and correct copy of the assignment abstract and record of the 179 Patent is attached

as Exhibits 6-12. Avalanche has the right to sue Everspin for its acts of infringement and to recover damages therefrom.

48.    On information and belief, Everspin has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 179 Patent under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale within the United States, and/or importing into the United States the Accused Instrumentalities.

49.    The Everspin Accused Products include at least the products described above and listed in Ex. 1 (Everspin Accused Product List), each of which infringe one or more claims of the 179 Patent, literally or under the doctrine of equivalents.

50.    On information and belief, Everspin sells and/or offers for sale each of the Everspin Accused Products within the United States. As shown below, Everspin's website directs customers in the United States to call its sales office at 5670 W. Chandler Blvd., Suite 130, Chandler, Arizona 85226 to purchase the Everspin Accused Products. *See* Everspin Spin-transfer Torque MRAM Technology (*available at* https://www.everspin.com/spin-transfer-torque-mram-technology).

# World-Wide Sales Offices

## USA/Canada/South and Central America

5670 W. Chandler Blvd., Suite 130
Chandler, Arizona 85226
Worldwide:  +1-877-480-MRAM (6726)
Tel:  +1-480-347-1111
Fax: +1 480-347-1175

51.    On information and belief, Everspin imports and/or causes to be imported into the United States each of the Everspin Accused Products. On information and belief, the Everspin

Accused Products are manufactured overseas and then imported into the United States by Everspin or on its behalf and/or sold after importation by Everspin or on its behalf.

52.    On information and belief, Everspin has knowingly and intentionally induced and continues to knowingly and intentionally induce others to sell, offer for sale, import, and/or use one or more of the Everspin Accused Products in a manner that directly infringes one or more claims of the 179 Patent under 35 U.S.C. § 271(b). This induced infringement includes acts of encouraging, instructing, and aiding one or more persons in the United States to make, sell, or offer to sell one or more of the Everspin Accused Products, in a manner that infringes the 179 Patent, and/or to import such items into the United States. On information and belief, Everspin has committed and continues to commit each of the foregoing acts with the specific intent that the Everspin Accused Products be made, used, offered for sale, sold, and/or imported in a manner that infringes the 179 Patent.

53.    Contemporaneously with the filing of this Complaint, Avalanche provided Everspin with a copy of this Complaint and exhibits to this Complaint along with a copy of a complaint filed in a parallel proceeding before the United States International Trade Commission (the "Parallel ITC Complaint"). For at least this reason, and on information and belief, Everspin was aware of the 179 Patent or acted with willful blindness as to its existence at least as a result of the filing of this Complaint and of Avalanche's Parallel ITC Complaint alleging infringement of the Asserted Patents. On information and belief, Everspin knew or should have known that its encouraging, instructing, and aiding of others in any and/or all of the foregoing acts would result in direct infringement of the 179 Patent.

54.    On information and belief, Everspin contributes to the infringement of one or more of the claims of the 179 Patent under 35 U.S.C. § 271(c) by offering to sell or selling and/or

importing a patented component, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use. The Everspin Accused Products are a material part of practicing one or more of the claims of the 179 Patent, have no substantial non-infringing uses, are not a staple article of commerce, and are especially made and adapted for use in an infringing manner. For example, the Everspin Accused Products are specifically manufactured, designed, and intended to include a magnetic tunnel junction with perpendicular magnetic anisotropy that is used to infringe the 179 Patent.

55.    A representative claim chart comparing the independent claim of the 179 Patent to the Everspin Accused Products is attached as Attachment A.

56.    Everspin has committed and continues to commit these acts of infringement without license or authorization.

57.    The direct and indirect infringement of the 179 Patent by Everspin has directly and proximally caused damage to Avalanche. This infringement entitles Avalanche to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

58.    The infringement of the 179 Patent by Everspin is willful and deliberate and continues to be willful and deliberate. At least as of filing of this Complaint and the Parallel ITC Complaint, if not earlier, Everspin knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 179 Patent. Such conduct constitutes, at minimum, willful infringement of the 179 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

59.     Unless Everspin is enjoined from infringing the 179 Patent, Avalanche will suffer irreparable injury for which damages are an inadequate remedy.

## SECOND CAUSE OF ACTION

### (EVERSPIN'S INFRINGEMENT OF U.S. PATENT NO. 9,419,210)

60.     Avalanche incorporates each of the preceding paragraphs as if fully set forth herein.

61.     The 210 Patent issued on August 16, 2016, to Avalanche.

62.     Avalanche owns by assignment the entire right, title, and interest to and in the 210 Patent. A true and correct copy of the assignment abstract and record of the 210 Patent is attached as Exhibits 6-12. Avalanche has the right to sue Everspin for its acts of infringement and to recover damages therefrom.

63.     On information and belief, Everspin has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 210 Patent under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale within the United States, and/or importing into the United States the Accused Instrumentalities.

64.     The Everspin Accused Products include at least the products described above and listed in Ex. 1 (Everspin Accused Product List), each of which infringe one or more claims of the 210 Patent, literally or under the doctrine of equivalents.

65.     On information and belief, Everspin sells and/or offers for sale each of the Everspin Accused Products within the United States. As shown below, Everspin's website directs customers in the United States to call its sales office at 5670 W. Chandler Blvd., Suite 130, Chandler, Arizona 85226 to purchase the Everspin Accused Products. *See* Everspin Spin-transfer Torque MRAM Technology (*available at* https://www.everspin.com/spin-transfer-torque-mram-technology).

# World-Wide Sales Offices

## USA/Canada/South and Central America

5670 W. Chandler Blvd., Suite 130
Chandler, Arizona 85226
Worldwide:  +1-877-480-MRAM (6726)
Tel:  +1-480-347-1111
Fax: +1 480-347-1175

66.    On information and belief, Everspin imports and/or causes to be imported into the United States each of the Everspin Accused Products. On information and belief, the Everspin Accused Products are manufactured overseas and then imported into the United States by Everspin or on its behalf and/or sold after importation by Everspin or on its behalf.

67.    On information and belief, Everspin has knowingly and intentionally induced and continues to knowingly and intentionally induce others to sell, offer for sale, import, and/or use one or more of the Everspin Accused Products in a manner that directly infringes one or more claims of the 210 Patent under 35 U.S.C. § 271(b). This induced infringement includes acts of encouraging, instructing, and aiding one or more persons in the United States to make, sell, or offer to sell one or more of the Everspin Accused Products, in a manner that infringes the 210 Patent, and/or to import such items into the United States. On information and belief, Everspin has committed and continues to commit each of the foregoing acts with the specific intent that the Everspin Accused Products be made, used, offered for sale, sold, and/or imported in a manner that infringes the 210 Patent.

68.    Contemporaneously with the filing of this Complaint, Avalanche provided Everspin with a copy of this Complaint and exhibits to this Complaint along with a copy of the

Parallel ITC Complaint. For at least this reason, and on information and belief, Everspin was aware of the 210 Patent or acted with willful blindness as to its existence at least as a result of the filing of this Complaint and of Avalanche's Parallel ITC Complaint alleging infringement of the Asserted Patents. On information and belief, Everspin knew or should have known that its encouraging, instructing, and aiding of others in any and/or all of the foregoing acts would result in direct infringement of the 210 Patent.

69.    On information and belief, Everspin contributes to the infringement of one or more of the claims of the 210 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and/or importing a patented component, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  The Everspin Accused Products are a material part of practicing one or more of the claims of the 210 Patent, have no substantial non-infringing uses, are not a staple article of commerce, and are especially made and adapted for use in an infringing manner. For example, the Everspin Accused Products are specifically manufactured and designed and intended to include a magnetic tunnel junction with perpendicular magnetic anisotropy that is used to infringe the 210 Patent.

70.    A representative claim chart comparing the independent claim of the 210 Patent to the Everspin Accused Products is attached as Attachment B.

71.    Everspin has committed and continues to commit these acts of infringement without license or authorization.

72.    The direct and indirect infringement of the 210 Patent by Everspin has directly and proximally caused damage to Avalanche. This infringement entitles Avalanche to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than

a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

73.    The infringement of the 210 Patent by Everspin is willful and deliberate and continues to be willful and deliberate. At least as of filing of this Complaint and the Parallel ITC Complaint, if not earlier, Everspin knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 210 Patent. Such conduct constitutes, at minimum, willful infringement of the 210 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

74.    Unless Everspin is enjoined from infringing the 210 Patent, Avalanche will suffer irreparable injury for which damages are an inadequate remedy.

### THIRD CAUSE OF ACTION

### (EVERSPIN'S INFRINGEMENT OF U.S. PATENT NO. 11,678,586)

75.    Avalanche incorporates each of the preceding paragraphs as if fully set forth herein.

76.    The 586 Patent issued on June 13, 2023, to Avalanche.

77.    Avalanche owns by assignment the entire right, title, and interest to and in the 586 Patent. A true and correct copy of the assignment abstract and record of the 586 Patent is attached as Exhibits 6-11. Avalanche has the right to sue Everspin for its acts of infringement and to recover damages therefrom.

78.    On information and belief, Everspin has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 586 Patent under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale, within the United States, and/or importing into the United States the Accused Instrumentalities.

79.    The Everspin Accused Products include at least the products described above and listed in Ex. 1 (Everspin Accused Product List), each of which infringe one or more claims of the 586 Patent, literally or under the doctrine of equivalents.

80.    On information and belief, Everspin sells and/or offers for sale each of the Everspin Accused Products within the United States. As shown below, Everspin's website directs customers in the United States to call its sales office at 5670 W. Chandler Blvd., Suite 130, Chandler, Arizona 85226 to purchase the Everspin Accused Products. *See* Everspin Spin-transfer Torque MRAM Technology (*available at* https://www.everspin.com/spin-transfer-torque-mram-technology).

# World-Wide Sales Offices

## USA/Canada/South and Central America

5670 W. Chandler Blvd., Suite 130
Chandler, Arizona 85226
Worldwide:  +1-877-480-MRAM (6726)
Tel:  +1-480-347-1111
Fax: +1 480-347-1175

81.    On information and belief, Everspin imports and/or causes to be imported into the United States each of the Everspin Accused Products. On information and belief, the Everspin Accused Products are manufactured overseas and then imported into the United States by Everspin or on its behalf and/or are sold after importation by Everspin or on its behalf.

82.    On information and belief, Everspin has knowingly and intentionally induced and continues to knowingly and intentionally induce others to sell, offer for sale, import, and/or use one or more of the Everspin Accused Products in a manner that directly infringes one or more claims of the 586 Patent under 35 U.S.C. § 271(b). This induced infringement includes acts of

24

encouraging, instructing, and aiding one or more persons in the United States to make, sell, or offer to sell one or more of the Everspin Accused Products, in a manner that infringes the 586 Patent, and/or to import such items into the United States. On information and belief, Everspin has committed and continues to commit each of the foregoing acts with the specific intent that the Everspin Accused Products be made, used, offered for sale, sold, and/or imported in a manner that infringes the 586 Patent.

83.    Contemporaneously with the filing of this Complaint, Avalanche provided Everspin with a copy of this Complaint and exhibits to this Complaint along with a copy of the Parallel ITC Complaint. For at least this reason, and on information and belief, Everspin was aware of the 586 Patent or acted with willful blindness as to its existence at least as a result of the filing of this Complaint and of Avalanche's Parallel ITC Complaint alleging infringement of the Asserted Patents. On information and belief, Everspin knew or should have known that its encouraging, instructing, and aiding of others in any and/or all of the foregoing acts would result in direct infringement of the 586 Patent.

84.    On information and belief, Everspin contributes to the infringement of one or more of the claims of the 586 Patent under 35 U.S.C. § 271(c) by offering to sell or selling and/or importing a patented component, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  The Everspin Accused Products are a material part of practicing one or more of the claims of the 586 Patent, have no substantial non-infringing uses, are not a staple article of commerce, and are especially made and adapted for use in an infringing manner. For example, the Everspin Accused Products are

specifically manufactured and designed and intended to include a magnetic tunnel junction with perpendicular magnetic anisotropy that is used to infringe the 586 Patent.

85.    A representative claim chart comparing the independent claim of the 586 Patent to the Everspin Accused Products is attached as Attachment C.

86.    Everspin has committed and continues to commit these acts of infringement without license or authorization.

87.    The direct and indirect infringement of the 586 Patent by Everspin has directly and proximally caused damage to Avalanche. This infringement entitles Avalanche to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

88.    The infringement of the 586 Patent by Everspin is willful and deliberate, and continues to be willful and deliberate. At least as of filing of this Complaint and the Parallel ITC Complaint, if not earlier, Everspin knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 586 Patent. Such conduct constitutes, at minimum, willful infringement of the 586 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

89.    Unless Everspin is enjoined from infringing the 586 Patent, Avalanche will suffer irreparable injury for which damages are an inadequate remedy.

## FOURTH CAUSE OF ACTION

### (EVERSPIN'S INFRINGEMENT OF U.S. PATENT NO. 10,490,737)

90.    Avalanche incorporates each of the preceding paragraphs as if fully set forth herein.

91.    The 737 Patent issued on November 26, 2019, to Avalanche.

92.     Avalanche owns by assignment the entire right, title, and interest to and in the 737 Patent. A true and correct copy of the assignment abstract and record of the 737 Patent is attached as Exhibits 6-10 and 13. Avalanche has the right to sue Everspin for its acts of infringement and to recover damages therefrom.

93.     On information and belief, Everspin has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 737 Patent under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale within the United States, and/or importing into the United States the Accused Instrumentalities.

94.     The Everspin Accused Products include at least the products described above and listed in Ex. 1 (Everspin Accused Product List), each of which infringe one or more claims of the 737 Patent, literally or under the doctrine of equivalents.

95.     On information and belief, Everspin sells and/or offers for sale each of the Everspin Accused Products within the United States. As shown below, Everspin's website directs customers in the United States to call its sales office at 5670 W. Chandler Blvd., Suite 130, Chandler, Arizona 85226 to purchase the Everspin Accused Products. *See* Everspin Spin-transfer Torque MRAM Technology (*available at* https://www.everspin.com/spin-transfer-torque-mram-technology).

# World-Wide Sales Offices

## USA/Canada/South and Central America

5670 W. Chandler Blvd., Suite 130
Chandler, Arizona 85226
Worldwide:  +1-877-480-MRAM (6726)
Tel:  +1-480-347-1111
Fax: +1 480-347-1175

96.     On information and belief, Everspin imports and/or causes to be imported into the United States each of the Everspin Accused Products. On information and belief, the Everspin Accused Products are manufactured overseas and then imported into the United States by Everspin or on its behalf and/or sold after importation by Everspin or on its behalf.

97.     On information and belief, Everspin has knowingly and intentionally induced and continues to knowingly and intentionally induce others to sell, offer for sale, import, and/or use one or more of the Everspin Accused Products in a manner that directly infringes one or more claims of the 737 Patent under 35 U.S.C. § 271(b). This induced infringement includes acts of encouraging, instructing, and aiding one or more persons in the United States to make, sell, or offer to sell one or more of the Everspin Accused Products, in a manner that infringes the 737 Patent, and/or to import such items into the United States. On information and belief, Everspin has committed and continues to commit each of the foregoing acts with the specific intent that the Everspin Accused Products be made, used, offered for sale, sold, and/or imported in a manner that infringes the 737 Patent.

98.     Contemporaneously with the filing of this Complaint, Avalanche provided Everspin with a copy of this Complaint and exhibits to this Complaint along with a copy of the Parallel ITC Complaint. For at least this reason, and on information and belief, Everspin was aware of the 737 Patent or acted with willful blindness as to its existence at least as a result of the filing of this Complaint and of Avalanche's Parallel ITC Complaint alleging infringement of the Asserted Patents. On information and belief, Everspin knew or should have known that its encouraging, instructing, and aiding of others in any and/or all of the foregoing acts would result in direct infringement of the 737 Patent.

99.     On information and belief, Everspin contributes to the infringement of one or more of the claims of the 737 Patent under 35 U.S.C. § 271(c) by offering to sell or selling and/or importing a patented component, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  The Everspin Accused Products are a material part of practicing one or more of the claims of the 737 Patent, have no substantial non-infringing uses, are not a staple article of commerce, and are especially made and adapted for use in an infringing manner. For example, the Everspin Accused Products are specifically manufactured and designed and intended to include a magnetic tunnel junction with perpendicular magnetic anisotropy that is used to infringe the 737 Patent.

100.    A representative claim chart comparing the independent claim of the 737 Patent to the Everspin Accused Products is attached as Attachment D.

101.    Everspin has committed and continues to commit these acts of infringement without license or authorization.

102.    The direct and indirect infringement of the 737 Patent by Everspin has directly and proximally caused damage to Avalanche. This infringement entitles Avalanche to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

103.    The infringement of the 737 Patent by Everspin is willful and deliberate and continues to be willful and deliberate. At least as of filing of this Complaint and the Parallel ITC Complaint, if not earlier, Everspin knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 737 Patent. Such conduct constitutes,

at minimum, willful infringement of the 737 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

104.    Unless Everspin is enjoined from infringing the 737 Patent, Avalanche will suffer irreparable injury for which damages are an inadequate remedy.

## PRAYER FOR RELIEF

WHEREFORE, Avalanche respectfully requests that the Court enter the following relief in its favor and against Everspin:

A.    For entry of judgment that the Asserted Patents have been and continue to be directly infringed by Everspin, either literally or under the doctrine of equivalents;

B.    For entry of judgment that the Asserted Patents have been and continue to be indirectly infringed by Everspin, either literally or under the doctrine of equivalents;

C.    For entry of judgment that Everspin's infringement has been willful and deliberate;

D.    For permanent injunctions enjoining the aforesaid acts of infringement by Everspin, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, dealers, and end users. In the alternative, if the Court finds that an injunction is not warranted, Avalanche requests an award of post-judgment royalty to compensate for future infringement;

E.    An award of all monetary relief adequate to compensate for damages resulting from Everspin's infringement, including lost profits but in no event less than a reasonable royalty under 35 U.S.C. § 284 for Everspin's infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law, and damages for willful infringement;

F.    A declaration that the case is an exceptional case and that Everspin be required to pay Avalanche's attorneys' fees pursuant to 35 U.S.C. § 285; and

G.    A judgment awarding Avalanche such other and further relief as the Court may deem just, reasonable, and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Avalanche hereby demands a trial by jury on all issues so triable.

<table>
<tr>
<td>

*Of Counsel*:

TENSEGRITY LAW GROUP LLP
Matthew Powers
William Nelson
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000
matthew.powers@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com

Aaron M. Nathan
Ronald J. Pabis
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000
aaron.nathan@tensegritylawgroup.com
ron.pabis@tensegritylawgroup.com

Dated: January 28, 2026

</td>
<td>

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Plaintiff Avalanche Technology, Inc.*

</td>
</tr>
</table>